IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**LINDA LEE HOGAN**,                               Case No. 3:13-CV-00687-SU

        Plaintiff,                                    **OPINION AND ORDER**

   v.

**CAROLYN W. COLVIN**,
Commissioner of Social Security,

        Defendant.

SULLIVAN, Magistrate Judge:

    Linda Lee Hogan ("plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II disability insurance benefits ("DIB") under the Social Security Act ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). All parties have consented to a Magistrate Judge in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed and this case dismissed.

Page 1 - OPINION AND ORDER

**PROCEDURAL BACKGROUND**

On June 17, 2010, plaintiff protectively applied for DIB. Tr. 4, 125-28. After the application was denied initially and upon reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 4, 47-71, 100-17. On April 5, 2012, an ALJ hearing was held, at which plaintiff testified and was represented by counsel; a vocational expert ("VE") also testified. Tr. 4, 24-46. On August 20, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 4-15. After the Appeals Council denied review, plaintiff filed a complaint in this Court. Tr. 16-19.

**FACTUAL BACKGROUND**

Born on February 24, 1952, plaintiff was 52 years old on the alleged onset date of disability and 54 years old on the date last insured. Tr. 125. Plaintiff graduated from high school and obtained vocational training in "key pouch and office." Tr. 151. She worked previously as an office manager, office clerk, and cashier. Tr. 41, 151. Plaintiff alleges disability beginning October 4, 2004, due to a traumatic injury, resulting in a "[f]used left ankle and curled left toes." Tr. 150.

**STANDARD OF REVIEW**

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence of record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez*

*v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can

work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national and local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity "during the period from her alleged onset date of October 4, 2004, through her date last insured of June 30, 2006." Tr. 6. At step two, the ALJ determined that plaintiff had the following severe impairment: degenerative joint disease of the left foot. *Id.* At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 7.

Because she did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the RFC "to perform sedentary work, as defined by 20 C.F.R. § 404.1567(a), except NO climbing of stairs, ropes, or ladders." *Id.*

At step four, the ALJ found that plaintiff could not perform her past relevant work. Tr. 10. At step five, the ALJ determined that, based on the VE's testimony, plaintiff could perform a significant number of jobs existing in the national and local economy despite her impairments, such as information clerk, appointment clerk, and receptionist. Tr. 11. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act prior to the date last insured. Tr. 12.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding her not fully credible; (2) improperly weighing the opinion of Steven Laxson, D.P.M.; and (3) failing to account for all of her limitations in the RFC, such that the VE's testimony was invalid.

I.   Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom statements concerning the extent and severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of symptoms, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that she is disabled because of left foot pain, which has remained constant since June 30, 2006, the date last insured. Tr. 33-38. Due to the severity of this pain, plaintiff explained that she needed to elevate and ice her left foot two to four times per day for

"20 minutes to maybe an hour and a half" at a time. Tr. 35. She also stated she could walk for a block and that standing or sitting "for too long" caused "throbbing [and] burning." Tr. 34, 38. Plaintiff specified that she would be unable to complete a single eight-hour day of work if she could only elevate and ice her foot during normal break periods and lunch, even with the option to alternate between sitting and standing at will. Tr. 37-38. Further, plaintiff remarked that foot pain made it difficult to walk at a normal pace on uneven ground or while climbing stairs. Tr. 35-37.

After summarizing plaintiff's hearing testimony, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that her statements regarding the extent of these symptoms were not fully credible due to her activities of daily living, inconsistent statements, history of conservative treatment, and the lack of corroborating objective medical evidence. Tr. 7-10.

Notably, the ALJ determined that plaintiff's credibility was impaired by her daily activities. Activities of daily living may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Substantial evidence supports the ALJ's conclusion in this case. As the ALJ noted, plaintiff worked after the alleged onset date, drove an automatic transmission, cleaned, cooked a variety of meals, cared for pets, did laundry, shopped, watched television and movies, socialized with her friends and family, managed money, was independent in her self care, and attended the Pendleton Roundup without a walking boot or other assistive device. Tr. 8-10, 172-78, 207-08, 211, 246. Both plaintiff and her mother-in-law stated, in July 2010, that she could walk for a "few blocks" before needing to take a short rest. Tr. 161, 177. In addition, the record reveals that plaintiff performed "a little" yard work, went outside daily, planned on getting back to the gym,

and was "busy" from 6 a.m. to 11 p.m. Tr. 173, 175, 208. These activities belie plaintiff's hearing statements that she was unable to work, even a single eight-hour shift, due to pain and the need to elevate and ice her left foot two to four times per day. As the ALJ determined, they also evince an ability to perform a limited range of sedentary work.

Additionally, the ALJ resolved that plaintiff's inconsistent statements regarding work performed after the alleged onset date rendered her less credible. Tr. 8-9. Inconsistencies in a claimant's testimony can serve as a basis for discrediting it. *Burch*, 400 F.3d at 680. At the April 2012 hearing, plaintiff testified that she did not work significantly for the family business after her left foot injury, only answering the phone "[m]aybe three, four" times per day. Tr. 30-33. Yet the record demonstrates that plaintiff told at least two treatment providers she had a job with the family business during the relevant time period. Tr. 208, 211. The ALJ expressly provided plaintiff with an opportunity to reconcile this inconsistency during the hearing, but her response was vague.[1] Tr. 8-9, 30-32. Even if this evidence could be interpreted more favorably to plaintiff, the ALJ's reading is nonetheless reasonable and therefore must be upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (court must uphold an ALJ's rational interpretation of the evidence); *see also* Pl.'s Opening Br. 22 (acknowledging that the evidence upon which the ALJ relied in making this finding "is subject to many equally reasonable interpretations").

Furthermore, the ALJ found that plaintiff lacked credibility because the objective medical evidence indicated that her foot condition was not as limiting as alleged. Tr. 9. "[L]ack of medical

---

[1] While not dispositive, the Court notes that, despite her testimony to the contrary, it is unclear how the three regularly scheduled breaks would be insufficient to accommodate plaintiff's need to elevate and ice her left foot, especially considering that such activities could also take place before or after the eight-hour work period.

Page 7 - OPINION AND ORDER

evidence . . . is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 680-81.  Plaintiff fractured her left foot in October 2004 and initially received conservative treatment. Tr. 273, 275. In January 2005, Dr. Laxson, plaintiff's podiatrist, reported that she had swelling and very little subtalar joint range of motion, but was wearing a shoe and "up on her foot significantly." Tr. 273. In August 2005, plaintiff received an injection into the sinus tarsi and achieved near complete relief, but only for "a couple of weeks"; as such, Dr. Laxson recommended surgery. Tr. 268, 270. Following her October 2005 surgery, plaintiff had swelling but overall was "doing much better"; radiographs showed "good positioning, stability, . . . no movement" and positive advancement. Tr. 257, 261-62. A January 2006 chart note reflected that plaintiff had not taken any pain medication for a week. Tr. 241. In May 2006, plaintiff underwent a hardware removal procedure, which healed normally. Tr. 249, 251-55. In September 2006, plaintiff presented to the clinic wearing an athletic shoe and walking with a slight limp. Tr. 247. She continued to have tenderness in her left foot, but nonetheless the swelling and discomfort had improved. Tr. 246. At an August 2007 appointment, plaintiff complained that her toes started to curl; she reported only "occasional pain in [her left] foot when she put on shoes especially." Tr. 245.

Plaintiff has not obtained any treatment for her allegedly disabling foot condition since 2007 because her insurance lapsed. Tr. 40. In any event, as the ALJ recognized, although plaintiff had periods of worsening swelling or pain, these symptoms were attributable to too much post-surgery activity and generally subsided over time. Tr. 8-9, 248, 259. As such, plaintiff's testimony that she could not work due to her left foot pain, which had allegedly remained constant, conflicts with her treatment records showing a reasonable, albeit slow, recovery.

Thus, the ALJ provided clear and convincing reasons, supported by substantial evidence, for

rejecting plaintiff's subjective symptom statements.  As a result, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).  The ALJ's credibility finding is affirmed.

II.     Medical Opinion Evidence

Plaintiff also contends that the ALJ neglected to provide a legally sufficient reason, supported by substantial evidence, to reject the opinion of Dr. Laxson.  There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  In considering medical evidence, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  More weight is afforded to "opinions that are explained than to those that are not, . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).  To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31).  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons.  *Id.*

In November 2004, plaintiff initiated care with Dr. Laxson for left foot pain.  Tr. 275.  Dr. Laxson's treatment of plaintiff ended in 2007.  TR.40.   In March 2012, Dr. Laxson completed a check-the-box form prepared by plaintiff's attorney.  Tr. 283-93.  Dr. Laxson indicated that plaintiff

did not require an assistive device; was able to use public transportation; could prepare a meal and take care of personal hygiene; could sort, handle, and file documents in a cabinet at or above waist level; had no restrictions related to extreme heat or cold; could occasionally climb smooth/rough inclines and stairs without carrying any weight; and could frequently employ overhead or hand functions, including writing or using a keyboard. Tr. 287-91. Dr. Laxson reported, however, that he did not know whether plaintiff was limited in several functional categories, including the amount she could lift or carry, her ability to perform fine manipulation or walk one block at a reasonable pace on rough or uneven surfaces, or the number of hours she could sit and/or stand in an eight-hour workday. *Id.*

In May 2012, Dr. Laxson signed on a letter prepared by plaintiff's counsel, clarifying or correcting his previous opinion. Tr. 294-96. In relevant part, Dr. Laxson specified that: "while [he] had not actually witnessed [plaintiff] attempt to walk a block on rough or uneven ground [or climb a few steps at a reasonable pace,] her pathology since 2006 has been such that she would probably not be able to do so"; "leaning her shoulder against the wall when going up stairs[,] lying down[,] elevating her foot while sitting down [and] avoiding rough and uneven surfaces . . . were all common and consistent with [plaintiff's] objective pathology"; pain would prevent plaintiff from walking up inclines and squatting; although he could not opine as to how long plaintiff could stand in a six- to eight-hour workday, "with this sort of pathology [he] would not expect her to be able to stand more than 30-60 minutes at a time"; and "some specific areas may have improved and some may have worsened over the last several years [but] the pathology in her foot is consistent with a similar and persistent overall level of symptoms and impairment since her injury and surgeries." Tr. 294-95.

The ALJ afforded Dr. Laxson's reports "only some weight" because: (1) "[h]is retrospective

Page 10 - OPINION AND ORDER

statements about [plaintiff's] condition on or before June 30, 2006, are speculative"; (2) they were "inconsistent with the treatment record," including the doctor's own chart notes; (3) "he did not specifically know many of [plaintiff's] limitations, but he gave an opinion in any event"; and (4) "the evidence does not show Dr. Laxson is qualified to assess [plaintiff's] ability to lift, carry, or reach with the upper extremities." Tr. 10. An ALJ may afford less weight, even where a treating physician is involved, to opinions that are conclusory and not accompanied by explanations or references to clinical findings. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Holohan*, 246 F.3d at 1202. An ALJ also need not accept a medical opinion that is inconsistent with the doctor's own chart notes. *Bayliss*, 427 F.3d at 1216. In addition, an ALJ may reject a medical opinion that "was completed . . . years after claimant's date last insured and was not offered as retrospective analysis." *Morgan v. Colvin*, 2013 WL 6074119, *10 (D.Or. Nov. 13, 2013) (citations and internal quotations omitted). Lastly, podiatrists are considered acceptable medical sources "for the purposes of establishing impairments of the foot, or foot and ankle only." 20 C.F.R. § 404.1513(a)(4).

Here, the record supports the ALJ's evaluation of Dr. Laxson's most recent opinion. As noted above, Dr. Laxson's prior chart notes reflect that plaintiff's foot condition was not as limiting as articulated in 2012. Notably, Dr. Laxson opined that plaintiff would be unable to walk up inclines or for a block over uneven ground, yet his records establish that plaintiff engaged in a variety of daily activities. Dr. Laxson did not observe plaintiff personally regarding the limitations indicated. Moreover, the doctor's opinion is speculative, conclusory, and made without reference to clinical findings. For instance, likely due to the fact that he stopped treating plaintiff in 2007, Dr. Laxson was unable to identify which of plaintiff's conditions had improved or worsened, and repeatedly

implicated that her alleged limitations were merely probable or consistent with her pathology. As a podiatrist, Dr. Laxson is not qualified to diagnose impairments associated with plaintiff's upper extremities; this, combined with the fact that he had not undertaken a formal functional assessment of plaintiff, suggests that the doctor's 2012 reports were based on plaintiff's less than credible self-reports. *See, e.g.*, *Belanger v. Colvin*, 2014 WL 1400205, *9-10 (D.Or. Apr. 7, 2014); *see also Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (reviewing court may "dra[w] specific and legitimate inferences from the ALJ's opinion").

Regardless, the ALJ's RFC is largely consistent with the concrete work-related limitations of function identified by Dr. Laxson.[2] *Compare* Tr. 283-96 (Dr. Laxson's opinion), *with* Tr. 7 (plaintiff's RFC); *see also Griffith v. Colvin*, 2014 WL 1303102, * 5 n.3 (D.Or. Mar. 30, 2014). Further, plaintiff does not now specify which alleged restrictions identified by Dr. Laxson preclude her ability to work or how the ALJ's rejection of this opinion is otherwise harmful. *See generally* Pl.'s Opening Br.; *see also McLeod v. Astrue*, 640 F.3d 881, 887-88 (9th Cir. 2011) (as amended) ("[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm"). As such, the ALJ provided legally sufficient reasons,

---

[2] Plaintiff asserts that Dr. Laxson's opinion supports her alleged need to elevate and ice her foot two to four times per day, which, according to plaintiff, precludes sustained work activity. Pl.'s Opening Br. 28-32; Tr. 37-38. However, neither Dr. Laxson's chart notes nor his 2012 reports address such a restriction. Rather, as discussed above, Dr. Laxson's records are silent as to this issue and his May 2012 report indicated only that "elevating [plaintiff's] foot while sitting down [was] consistent with her objective pathology." Tr. 295. As such, the ALJ resolved that plaintiff was limited to sedentary work, which typically entails sitting for approximately six hours and standing no more than two hours in an eight-hour workday. The VE identified representative occupations that occur indoors in a controlled office environment. *See, e.g.*, *Griffith*, 2014 WL 1303102 at *4-8; *Alsup v. Astrue*, 2012 WL 3817795, *7-9 (D.Or. Sept. 4, 2012). The Court notes that, given these circumstances, nothing would prevent plaintiff from raising her foot while seated as needed throughout the workday.

supported by substantial evidence, for discrediting the opinion of Dr. Laxson.

III.    RFC Assessment and Step Five Finding

Plaintiff next argues that the ALJ's RFC and step five finding are erroneous because they do not account for limitations described in her hearing testimony or by Dr. Laxson. The RFC is the maximum that a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545. In determining the RFC, the ALJ must consider restrictions imposed by all of a claimant's impairments, even those that are not severe, and evaluate "the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, *available at* 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As discussed above, the ALJ properly discredited plaintiff and Dr. Laxson. Accordingly, plaintiff's contention, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. *Bayliss*, 427 F.3d at 1217-18; *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008). Finally, to the extent she asserts the ALJ failed to properly assess her ability to sustain activity, plaintiff's argument is unavailing. This District has routinely rejected general arguments regarding sustained activity because "the claimant's ability to maintain employment is subsumed in the RFC determination." *Valvo v. Astrue*, 2013 WL 1326588, *9 (D.Or. Mar. 30, 2013) (citations and internal quotations omitted); *Porter v. Astrue*, 2009 WL 2595562, *15 (D.Or. Aug. 19, 2009) (citing SSR 96-8p, *available at* 1996 WL 374184). In sum, the Court finds that the ALJ's RFC for a limited range of sedentary work accounts for all of the well-supported limitations in the record.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 30th day of April, 2014.

    /s/ Patricia Sullivan
    Patricia Sullivan
    United States Magistrate Judge